### *JACOB HAMMEL v. THOS. W. PALMER ET AL.

BEQUEST OF LOT DIVIDED BY STREET.

R, for many years owned a certain tract of land in Monroeville, known as lot 121, which prior to his death was divided by the opening and extension of a street. R, occupied the portion of the lot on one side of the street for warehouse purposes, and the other was occupied by his servant, H, who received a certain sum in wages and the use of that portion of the lot without rental. R, in his will, devised to H " the lot known as number ——, in Monroeville, Ohio, on which the said H now resides." *Held:* That under said will, H took only that portion of the lot lying on one side of the street, which he had actually occupied.

BENTLEY, J.

The case of *Hammel* v. *Palmer* and others, is a case that comes into this court upon appeal from the court of common pleas. Both parties claim the legal title and possession of a certain piece of real estate in Monroeville, Ohio, and the form which the action has now assumed is that each party asks that the title and possession in the real estate in question may be quieted as against the other, it being agreed by the parties that whichever party to this controversy may be found to be legally entitled to the real estate, shall be deemed in possession, sufficient for the purpose of granting a decree to quiet his title.

The question presented relates to the construction of a portion of the will of Henry M. Roby, deceased, which was duly made, and after the death of Mr. Roby, in 1890, was duly admitted to probate.

The contention arises for the most part, under the third paragraph of the will, which reads as follows: "I give and devise to Jacob Hammel the lot known as number ——, in Monroeville, Ohio, on which the said Hammel now resides."

Mr. Hammel contends that the property in question in this action was devised to him under that clause of the will.

On the other hand, the defendants claim that it was not so devised, that is that it was not included in the description in this third paragraph of the will.

The facts bearing upon this matter may be briefly recited as these: Henry M. Roby for many years owned a certain parcel of real estate in Monroeville, lying to the north of Monroe street, the southern boundary of that parcel being Monroe street. On the north of this parcel of real estate, was another parcel belonging to other parties and which has been platted as an addition to the town of Monroeville. In that addition and dedicated as a part of it, was a street called Prospect street, which came down in a southerly direction to the north line of the parcel of real estate here in question belonging to Henry M. Roby. This platting of the parcel of land north of the one here in question occurred many years ago, I think prior to the year 1893. After the platting and somewhere from the year 1873 to 1875,—the particular year is of no importance,—Prospect street thus dedicated down to the north boundary of the parcel here in question, was extended, in effect at least, and opened out to Monroe street through the parcel here in question. That threw a small portion of the parcel here in question which is called lot 121 to the west of Prospect street thus extended. On this portion of the lot designated generally as lot 121, the plaintiff in this action resided for many years. He was in the employ of Henry M. Roby as a man of all work, a laborer who did

---

*This judgment was affirmed by the Supreme Court, without report, 55 O. S., 642.

whatever work was designated by Mr. Roby in his lifetime. There was a house upon this westerly portion of lot 121, west of Prospect street, in which Mr. Hammel was by Mr. Roby allowed to live without paying any rent. Mr. Hammel says that he received so much in wages from Mr. Roby and the rent of this ground free.

Many years ago, in 1873 or 1874, when Prospect street was thus in fact opened out southerly to Monroe street, and through lot 121, a fence had to be moved westerly so that it became the eastern boundary of the parcel of land on which Mr. Hammel lived, and the western boundary of Prospect street thus extended. To the knowledge of Mr. Roby, this street was improved at various times, and partially, by his own direction. Trees were set out within the boundary of the street, as is usual along a line of street for shade trees, and walks were constructed on each side of the street and ditches made in throwing up the center of the street for travel in the highway; and the village itself, by action of its council, caused this so-called extension of Prospect street to be improved from time to time, and to all outward appearances, for many years before the death of Mr. Roby, it was a public highway of the village, although it was never formally, in writing, dedicated by Mr. Roby to the public use; but it became used in this way for travel, for many years before Mr. Roby's death. This lot 121, was divided by this street and the improvements upon the street, by a fence on the side of the street, into two parcels, one of which was this land upon which Mr. Hammel resided, and the other part, east of Prospect street thus extended, was in the possession of Mr. Roby at the time of his death, and upon it was quite a large warehouse covering quite an extent of ground, and in which was the office of Mr. Roby, and in which he spent a large part of his time up to the time of his last sickness, in 1890. Mr. Roby resided in another part of town, and his usual way of going from this building upon the eastern part of lot 121 to his house, took him past the residence of Mr. Hammel and along past the portion of Prospect street thus extended through the so-called lot 121. That was the actual situation at the time this will was made, and at the time Mr. Roby died.

It does not appear that in any original platting of the town this parcel of land was designated as lot 121. A map of the village was introduced in evidence showing this parcel as designated by this number, 121, and it was shown that the plat by which it originally got this designation was a plat made for the purposes of taxation and perhaps under the direction of the county auditor or recorder. It was recorded as a plat in the record of the county.

It was testified that the reason this plat was made was because there were many lots in this village, some of them designated under certain numbers in the original plat and other lots designated by similar numbers in the several additions to the town, and there might arise some confusion and so, for the purpose of taxation, and in order to obviate that difficulty, this general plat was made upon which this parcel became lot 121. Mr. Hammel, prior to the death of Mr. Roby, never had possession of the eastern portion of this lot 121, but he did have possession of this western portion where he resided. Under circumstances of that kind, it is claimed that by force of the terms of this third clause in the will, the whole of lot 121 passed to Mr. Hammel. The plaintiff makes that claim and the other parties claim that, under the terms of the will, and under the circumstances of the case, the will should be construed as only devising to Mr. Hammel that portion west of Prospect street upon which he resided.

There is no particular controversy among the counsel as to the general rules of law upon the subject of the construction of wills, namely: That the court should ascertain by the terms of the will, and by the circumstances surrounding the testator at the time he makes it, what his intentions in fact were in using the terms that he did in fact use.

Strictly and legally speaking, when we speak of a certain designated lot in a village by number, and there is that numbered lot and only one lot so designated, one number of that figure, the land included in the platting of the lot should be held to have been intended. It may be, of course, that the mere terms, a certain lot number 121, we will say, in a village, may or may not designate one certain defined parcel of land within the bounds of the village. There may be several lots, or more than one, bearing this same number. There may be a lot of that number in the original plat and there may be a lot of the same number in one or more additions to the original plat and all within the designated village; or, there may be but one lot of that one number. The term lot, as is well known, is used very frequently with other designations, as simply indicating a parcel of land. Defined, it may be by dedication, or it may be by the existence of bound-

aries, such as fences, or it may be by other means pointed out and designated. This will says that the lot known as number [blank] in Monroeville, Ohio, on which Mr. Hammel resides, is devised to him, the number not being inserted.

It does not appear that the westerly portion upon which he resided was designated in any plat as any particular number; neither does it appear that the westerly portion was designated by any particular number originally; but the whole parcel simply bears in this plat that I have mentioned, the assessor's plat,. the number "121."

We have looked at this will and considered the circumstances and the authorities cited by the counsel on each side of this case, carefully, and we think thoroughly, and we cannot resist the conviction, from considering it all, that Mr. Roby did not intend, by those words in the will, to devise the eastern portion of this property thus entirely separated from the western portion by Prospect street; that he simply intended to devise to Mr. Hammel that portion of what was originally lot 121 upon which Mr. Hammel resided, and that that was the lot intended by him in this third subdivision of his will, and with that view of the matter, it follows that the decree must be in favor of the defendants and against the plaintiff.

*T. H. Kellogg*, for plaintiff.

*Hamilton & Ford*, for defendants.